Buddy PURKEY, Appellant,

v.

The STATE of Oklahoma, Appellee.

No. A–17384.

Court of Criminal Appeals of Oklahoma.

Oct. 18, 1972.

Rehearing Denied Nov. 17, 1972.

Thomas Hanlon, Tulsa, for appellant.

Larry Derryberry, Atty. Gen., Michael Cauthron, Asst. Atty. Gen., Charles F. Alden, III, Legal Intern, for appellee.

## OPINION

BUSSEY, Presiding Judge:

Appellant, Buddy Purkey, hereinafter referred to as defendant, was charged, tried, and convicted in the District Court of Tulsa County, Oklahoma for the offense of Shooting with Intent to Kill; his punishment was fixed at eight (8) years imprisonment, and from said judgment and sentence, a timely appeal has been perfected to this Court.

At the trial, Arthur Jordan, age sixty-six, testified that he owned and operated O. T.'s Tavern in Collinsville, Oklahoma. At approximately 11:00 on the evening of May 30, 1971, the defendant and three companions came into the tavern and ordered three bottles of beer and a Coke. The defendant played several games of pool and one of the persons with whom he was playing paid for two beers for the defendant. At approximately five minutes till twelve, Jordan started making preparations to close the club, and the two girls that were with the defendant and his male companion went outside. The defendant stated, "I've got four beers coming, haven't I?" Jordan replied that he had only been paid for two beers. He started to open up his beer box to get the defendant's beer when the defendant grabbed him around the neck. Defendant threw him up against the counter and the beer box. Jordan stated, "I'll give you two beers to keep from having any trouble with you." Jordan reached into the beer box to get the beer, and the defendant continued to hit him. He testified that the defendant's companion asked Purkey to leave Jordan alone, but the defendant did not pay any attention to him. Mitchell Enlow, who was also in the tavern, also tried to get the defendant to leave Jordan alone. Defendant turned Jordan loose and started pointing his finger at Enlow. Jordan ran behind the bar and got a gun. He pointed the gun at the defendant and told him to get the beer and to get out of there and to never come back. The defendant started walking to the door, and Jordan leaned down to put up the gun. The defendant came back through the door with a gun in his hand and said, "Drop your gun." and Jordan replied, "I've already put it up." He further testified that the defendant then fired a shot which struck him in the back of the neck just below his ear.

Mitchell Enlow testified that he was in the bar on the evening in question. He testified that Jordan and the defendant got into an argument concerning how many beers defendant had coming. Defendant grabbed Jordan around the neck and slung him over toward the beer box and told him to get his beers out of there. He further testified that the defendant slung and threw him around that area for several minutes. Enlow attempted to intercede and the defendant turned around and stated, "You stay out of it or I'll break you into little pieces." Defendant started walking

toward him (Enlow) and Jordan went behind the bar and got his gun. Jordan said, "Now you can leave. You've got your beer; now I want you to leave right now and don't come back." Defendant and his friend agreed to leave and started walking toward the door. Defendant suddenly turned and came back in, pushed his buddy aside and stuck a gun in Jordan's face. Defendant said, "Drop that gun or I'll shoot you." . He fired the gun, and defendant then swung the gun around the room, and his friend said, "Let's go." He testified that the defendant's friend was standing about three or four feet behind him and did not pull his arm at the time the shot was fired. They both then went out the door. Jordan ran behind the bar and observed that he was bleeding in the neck. After putting a towel around his neck, he went outside to attempt to get the tag number of defendant's car. He observed a brown or copper-looking Buick, pulling a stock car leaving the parking lot.

Ron Coppedge testified that he drove past the O. T.'s Tavern on the night in question and observed a Buick pulling a stock car. He subsequently gave a description of the vehicle to the police.

Larry Holly, the under-sheriff of Nowata County, testified that he received a radio transmission from Tulsa County concerning a particular vehicle, and that he assisted other officers set up a road block on Highway 169, just south of the Kansas border. He observed a car pulling a trailer, which matched the description, turning off Highway 169. He took pursuit and stopped the vehicle. Defendant got out of the car and asked "what in the hell I was stopping him for." He informed the defendant that he was under arrest. Defendant was belligerent and started following him around, cussing and hollering. Defendant stated that if the officer searched his car, defendant was "going to knock his teeth out." After another officer arrived, Holly opened the car door of the defendant's vehicle and observed a purse lying on the floorboard with a barrel of a gun sticking from it.

Deputies Jordan and Baker testified concerning the physical evidence, consisting of a gun and bullets.

For the defense, Denise Cummins testified that on the evening in question she, Cecilia Ann Hare, Leon Stamper, and the defendant stopped at the O. T.'s Tavern, after attending the car races. Defendant and Stamper played pool with other persons in the tavern and won several beers. As they were getting ready to leave, Stamper went over and asked Jordan if they could have their beers. Jordan said, "You've only got two beers coming," wherein Stamper said something about more beers. Defendant went over to the counter and joined in the argument. Jordan started to get behind the bar, and the defendant pushed him up against the ice cooler, and said that he wasn't going to call the law, and that they just wanted their four beers. At that time, Denise Cummins and Cecilia Hare went outside. She testified that she went out and came back into the bar several times. She testified that Jordan reached behind the bar, pulled out a gun, and cocked it. Jordan stated to the defendant that he was "so large that he couldn't miss, and that he was going to blow his guts out." Stamper stated that they were leaving, and the defendant turned around and walked toward her. When he was about two steps away, she handed him a gun. Defendant turned around and told Jordan to "drop his gun and walk toward him." He testified that she again left and did not see the shot fired.

Cecilia Ann Hare testified that she was at the tavern with defendant and the two others. She testified that defendant and the proprietor got into an argument concerning beer. She went outside and returned back into the club very shortly, where she observed Jordan holding a cocked gun, and telling the defendant that he was going to shoot him. She went back outside and did not see the shot fired.

Leon Stamper testified that he was in the tavern with defendant and the two girls on the evening in question. He testi-

fied that they played several games of pool and won four beers. When they got ready to go, he and Jordan got into an argument concerning the number of beers they had coming. Purkey came up to the bar and entered into the argument, and subsequently had a "little scuffle" with Jordan. Jordan pulled a gun, cocked it, and told the defendant, "I can't miss you from here, you big son-of-a-bitch." He told Jordan to put the gun down, and that there was no sense in anyone getting shot over a can of beer. Defendant turned, and when they were about half-way out he turned again, and this time had a gun in his hand. Defendant told Jordan to drop the gun and he (Stamper) grabbed the defendant's arm, and the gun discharged.

The defendant testified that he and Stamper played pool in the tavern on the evening in question, that they won beers, and they decided not to drink them there, but rather to take them with them when they left. Stamper went up to the bar to get the four beers, and Jordan told them that they did not have but two coming. He went up to the bar and joined in the argument. Jordan continued to insist that they were only entitled to two beers and he tried to get behind the bar. Defendant blocked the entrance and would not let Jordan get behind the bar. He told Jordan that all they wanted was their beers, and then they would go. Defendant testified that he scuffled a little bit with Jordan, and finally, decided that he would give up on the idea of getting the beer. Enlow said something, and when he turned to tell Enlow to stay out of it, Jordan went behind the bar and pointed a cocked pistol at him. Jordan stated that he was "big enough that he couldn't miss me from there and he called me a son-of-a-bitch." Stamper told Jordan to put the gun down, and that they were leaving. He turned around to his right and Denise gave him a cocked gun. He reached across the bar and got a hold on Jordan's hand and told him to put his gun down, but Stamper either jerked his arm or bumped into him, and the gun discharged accidentally. De-

fendant further stated that he did not intend to shoot Jordan, and that he was afraid that Jordan would shoot him before he left the bar. Defendant testified that he did not know that the shot actually hit Jordan when they left the tavern.

■ The first proposition asserts that the trial court erred in overruling appellant's demurrer to the evidence. Defendant argues that the State's evidence was insufficient as a matter of law, and that there was no proof of specific intent. In the first syllabus of Epperson v. State, 406 P.2d 1017, this Court stated:

"The subjective intent with which an act is done is seldom established by direct evidence, but must of necessity be determined by all of the attending facts and circumstances surrounding such act."

We are of the opinion that all of the facts and attending circumstances surrounding the "act" were sufficient to submit the question of intent to the jury. The evidence on behalf of the State of Oklahoma adduced that the defendant, after assaulting Jordan, was ordered to leave the tavern by gunpoint. Instead of leaving, the defendant obtained a pistol and returned and became the aggressor. We, therefore, find this proposition to be without merit.

■ The final proposition asserts "error of the trial court in overruling appellant's motion for a mistrial and prejudicial questions asked by the District Attorney." We have carefully considered the alleged improper remarks and questions asserted by the defendant and find that the same do not constitute fundamental error. Defendant first objects to a statement made by the assistant prosecuting attorney in the re-direct examination of Denise Cummins as follows:

"[By Mr. Hanlon, For the Defendant] Q. And he is the one that pulled that pistol up there first, wasn't he?

"A. Yes.

"Q. And before you ever handed Bud the pistol he told him he was going to blow his guts out?

"BY MR. BYARS: I will object to that. Watch it, that is what she got impeached on awhile ago.

"BY THE COURT: Talk to me, don't be talking to each other.

"BY MR. BYARS: I'll object to that as being asked and answered.

"BY THE COURT: I'm going to let him go into it this time. Don't lead her, she is still your witness on direct." (Tr. 140)

Although this Court does not condone the dialogue, we observe that the witness prior thereto had given inconsistent testimony as to when she had handed the pistol to the defendant. We further observe that the trial court overruled the Assistant District Attorney's objection.

Defendant next complains that the Assistant District Attorney asked the witness questions referring to a previous statement given by her to the sheriff's office outside the presence of the defendant, which was hearsay. We are of the opinion that such questions were proper and that a witness may be impeached by showing prior inconsistent statements. We, therefore, find this proposition to be without merit.

In conclusion, we observe that the record is free of any error which would justify modification or require reversal. The judgment and sentence is, accordingly, affirmed.

BRETT, J., concurs.